UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: SUBPOENA TO DELTA AIR LINES, INC.,

No. 21-mc-51057

Honorable Nancy G. Edmunds

IN UNITED STATES OF AMERICA V. BRIAN W. BENDEROFF,

_____/

**ORDER GRANTING DELTA AIR LINES, INC.'S MOTION TO QUASH SUBPOENA [1] ISSUED BY DEFENDANT BRIAN W. BENDEROFF**

Movant Delta Air Lines, Inc. ("Delta") brings this motion for an order quashing subpoena issued by Defendant Brian W. Benderoff ("Defendant") in *United States of America v. Benderoff*, case no. 20-cr-20380. (ECF No. 1.) The subpoena was served on Delta's legal counsel via certified mail on July 30, 2021. (ECF No. 1-1.) Delta filed this motion on August 11, 2021, before the response date for the subpoena.[1] (ECF No. 1.) Defendant filed a response and Delta filed a reply. (ECF Nos. 5, 6.) The Court ordered determination of this motion without oral argument. (ECF No. 3.)

Federal Rule of Criminal Procedure 17(c) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The Court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive,

---

[1] On August 10, 2021, Defendant Benderoff filed a motion and brief to compel discovery in the underlying criminal case no. 20-cr-20380, ECF No. 65. The subject of that motion is the subpoena to Delta, yet the motion was filed before a response to the subpoena was due on August 16, 2021 and before Delta's motion to quash. That motion is moot and will be stricken from docket no. 20-cr-20380.

1

the court may permit the parties and their attorneys to inspect all or part of them." Fed. R. Crim. P. 17(c)(1). "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

The subpoena seeks the "[n]ames and last known contact information (including all phone numbers, e-mail addresses, home addresses) to all passengers on Delta flight number 1932 on June 23, 2016." (ECF No. 1-1.) Delta argues that Defendant Benderoff has not met the hurdles necessary to compel the production of this information.

In his response, Defendant argues that he was "effectively arrested at the airport without probable cause that he had committed any crime" and he seeks to suppress statements made and evidence seized from him during this time. (ECF No. 5, PageID.19.) He narrates that on June 23, 2016, he was seated in the first class section of the Delta flight for which he seeks the passenger manifest. (ECF No. 5, PageID.18.) He was one of the first passengers to exit the plane and was stopped by "multiple armed federal agents with dogs." (*Id.*) The agents "ordered" him to go with them, and this "detention was in plain view of the passengers exiting the plane." (*Id.*) He claims that the agents accompanied him into the bathroom, then escorted him to the baggage claim. (*Id.* at 18-19.) The agents then drove him to an offsite government location where he was interrogated for ten hours. (*Id.* at 19.) Defendant Benderoff filed a motion to suppress the statements and evidence taken at the offsite location. He argues that he was effectively arrested, while the government's position is that he went with the agents voluntarily. (*Id.*)

Defendant avers that the testimony of the passengers on that flight is expected to support his position that he did not go voluntarily with the agents, because the "passengers eyeballed the encounter with the agents," they were "in a position to hear

2

the words of the agents and [Defendant]," and they were able to observe the tone and demeanor of the agents and Defendant, and were in a position to assess whether "the words and conduct of the parties was consistent with [Defendant] Benderoff voluntarily leaving the airport grounds with the agents." Defendant asserts that with the subpoenaed contact information of the passengers on that flight, an investigator will contact and interview the passengers. (*Id.*)

**Analysis**

As an initial matter, Delta argues that the timing of the subpoena fails to comply with a May 4, 2021 Order in the *U.S. v. Benderoff* case that required the production of documents to the court 90 days prior to the previously scheduled October 19, 2021 suppression hearing, which would have been July 22, 2021, and the subpoena itself was dated eight days later. (ECF No. 1, PageID.8.) The Court need not reach this argument.

On August 16, 2021, the Court entered a new stipulated scheduling order, and the trial is now set for May 2022. The Court also notes that it allowed Defendant Benderoff to withdraw without prejudice his motion to suppress for which the subpoenaed information is sought. With that motion no longer pending, the Court could quash the subpoena as moot or on the basis of relevance alone. However, given the extended timeframe for pretrial motions under the current scheduling order, and Defendant's withdrawal of the motion without prejudice, the Court finds a consideration of the merits of this motion to quash is in order.

One of the "fundamental characteristics of the subpoena duces tecum in criminal cases" is that "it was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974) (citing *Bowman Dairy Co. v. United*

*States*, 341 U.S. 214 (1951)). A party seeking to obtain pretrial document production by means of a subpoena duces tecum must show that the information sought is relevant, admissible and specific. *See Nixon*, 418 U.S. at 700. "[P]roduction pursuant to Rule 17(c) is appropriate where it is shown that: (1) the documents are evidentiary and relevant; (2) they are not otherwise procurable, with due diligence, in advance of trial; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial; and (4) the application was made in good faith and is not a fishing expedition." *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir.1990) (citing *Nixon*, 418 U.S. at 699-700).

Delta argues first that the subpoena lacks specificity and is the epitome of a fishing expedition. (ECF No. 1, Page.ID.4.) Delta also argues that the passenger contact information is confidential pursuant to 14 C.F.R. § 243.9. The Court agrees that the subpoena lacks the specificity necessary to avoid being a "fishing expedition." Given the speculative nature of the evidence Defendant ultimately hopes to identify through this list of names, it is not clear how this deficiency could be remedied. Defendant means to contact everyone on the list to determine whether they might remember having seen or heard something revealing about his interactions with the federal agents at Detroit Metro Airport after he disembarked the plane more than five years ago.

As to relevancy and the first part of the test, "that the documents are evidentiary and relevant," Defendant argues that "the documents are relevant to support Benderoff's position that he was not given a choice on whether he could go with the agents." (ECF No. 5, PageID.20.) The subpoenaed documents themselves, the passenger list and contacts, are not relevant to whether Defendant went with the agents voluntarily. The

4

document(s) may lead to witnesses, but the document itself will not shed light on the issue, nor is it evidentiary.

It is worth noting that Defendant has neither alleged nor shown that the requested documents have any potential as direct evidence at trial or are relevant to a defense to the charges. He argues their relevance to only the motion to suppress, no longer pending with this Court. *See Nixon*, 418 U.S. at 700 ("there was a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment"; "there was a sufficient preliminary showing that each of the subpoenaed tapes contains evidence admissible with respect to the offenses charged in the indictment").

Delta argues that even if the Court were to review the requested information *in camera* prior to having Delta release it to Defendant, it will not meet the *Nixon* standards. The Court agrees. Defendant Benderoff has requested the names and contact information for everyone on a specified flight. Even assuming the names and contact information were complete, current and accurate, no further information would be gleaned from the passenger manifest and contact information alone. It would serve only as a starting point for further discovery by Defendant's investigator.

A review of the documents themselves, by this Court or Defendant Benderoff, will not indicate which passenger information may be relevant to Defendant's motion to suppress and which is not. Defendant seeks the information with the sole intent that it may lead him to other evidence: witnesses. *See generally United States v. Gross,* 24 F.R.D. 138, 141 (S.D.N.Y. 1959)( *"*Nor can the Government use Rule 17(c) to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case. This type of discovery, permissible under the Federal Rules of Civil

Procedure, has not been authorized for criminal trials. What is allowed to the parties under Rule 17(c) is to obtain documents which are admissible in the sense that they are competent."). Further, the reasons for which Defendant seeks this information do not go to the crimes charged, but to the voluntariness of the statements he made to the agents. There is no allegation tying what these passengers may have seen or heard to the charges or to the voluntariness of the statements themselves made outside the presence of the other passengers. "Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'" *United States v. Reed*, 726 F.2d 570, 577 (1984) (*Reed* is similar to the case at bar. In Reed, the defendant in a criminal case served a subpoena seeking confidential information from a third party. "In view of the insubstantial showing of relevance, admissibility, and specificity of the material sought, weighed against the interests of the City and individual witnesses in nondisclosure, the district court's ruling was neither arbitrary nor unsupported . . . .").

To the extent Defendant relies on civil cases in which discovery of passenger manifests was allowed pursuant to a confidentiality agreement, such cases are not persuasive in the criminal setting. *Cf. Jakobot v American Airlines, Inc.*, 2011 WL 13214326, *2 (S.D. Fla. May 23, 2011). The standard for document discovery in civil cases is not the same as under the Federal Rules of Criminal Procedure. *See Nixon*, 418 U.S. at 688.

As to the second part of the *Nixon* test, neither party suggests that the information Defendant seeks is available elsewhere. As to the third part of the test, that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial,"

6

Defendant argues that the "documents are relevant to support Benderoff's position that he was not given a choice on whether he could go with the agents," and that the "passengers are unbiased impartial witnesses whose testimony will have a direct impact on the outcome of the suppression motion." (ECF No. 5, PageId.20-21.) The nature of the information Defendant seeks belies the argument that it is an appropriate production request for pretrial document production via subpoena. "Production" and "inspection" of the requested information in advance of trial (or a motion to suppress) will not alone yield admissible, relevant information.

For the foregoing reasons, Defendant Benderoff's subpoena to Delta Air Lines, Inc. is quashed.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 14, 2021


I hereby certify that a copy of the foregoing document was served upon counsel of record on October 14, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

7